CONCURRENCE IN THE JUDGMENT
ALICE M. BATCHELDER, Circuit Judge,
concurring in the judgment only.
When this appeal was here before, the majority vacated a grant of summary judgment and remanded for the USEPA to challenge DTE’s pre-construction emission projections. I dissented because actual events had disproven USEPA’s projected (hypothetical) emissions calculations (which were the entire basis for its claim), USEPA had not accused DTE of any noncompliance with any regulations, and the majority opinion was creating a de facto prior-approval or second-guessing scheme. See United States v DTE Energy Co. (DTE 1), 711 F.3d 643, 652-54 (6th Cir. 2013) (Batchelder, J,, dissenting). On remand, however, the district court again granted summary judgment to DTE, finding that USEPA had not raised a valid claim of regulatory non-compliance and reasserting that actual events had dispro-ven USEPA’s hypothetical emission projections. USEPA appealed again, relying on the prior decision by the DTE I majority.
Therefore, this time around we again face the question of whether USEPA may second guess DTE’s preconstruction emission projections, using its own hypothetical projections, without regard to actual events. The dissent here would affirm this grant of summary judgment on the basis that USEPA has not raised a valid claim of regulatory non-compliance and mere second guessing is impermissible. That was my view during the prior DTE I appeal, as explained fully in that dissent, and I would very much like to agree. But, unlike the prior appeal, this appeal does not present an open issue and I cannot ignore the DTE I opinion or pretend that it means something other than what it says. Despite my continuing disagreement with it, DTE I is the law of the Sixth Circuit. Consequently, USEPA was entitled to rely on it and the district court was obliged to follow it. More importantly, we must follow it as well.
Simply put, the DTE I opinion clearly requires that we reverse the district court’s grant of summary judgment to DTE and remand for reconsideration con *742 sistent with that prior opinion. Therefore, I concur in the judgment to REVERSE and REMAND, but I do not join any language or analysis in the lead opinion that could be read to expand the prior DTE I opinion.
I.
DTE Energy planned renovations at its Monroe Power Plant. In accordance with all applicable state and federal regulations, it conducted its own determination as to whether the renovations would constitute a “significant modification” that would require a PSD permit, and determined that it would not. Specifically, DTE relied on “demand growth” to predict that its post-project emissions would not increase from its baseline emissions levels and that there was no “reasonable possibility” that this renovation would be a significant modification.
But months later (after construction was well underway), USEPA sued DTE, claiming that — based on USEPA’s expert’s different hypothetical emission predictions— DTE should have gotten a PSD permit. DTE moved for summary judgment, arguing that a PSD permit was unnecessary based on either its pre-construction prediction or actual post-construction test results, which established that emissions did not increase (and actually decreased) after the renovation. Basically, USEPA wanted DTE to go back in time and re-do its predictions the same way USEPA’s expert would have done them, so as to predict emissions increases and mandate a PSD permit, even though actual events had already proven USEPA’s predictions were wrong.
The pertinent regulations say: “a project is a major modification for a regulated NSR pollutant if it causes two types of emissions increases — a significant emissions increase ... and a significant net emissions increase.... The project is not a major modification if it does not cause a significant emissions increase_Regardless of any such preconstruction projections, a major modification results if the project causes a significant emissions increase and a significant net emissions increase.” 40 C.F.R. § 52.21(a)(2)(iv).[1]1 read this last sentence also to mean that, regardless of any pre-construction projections, a major modification does not result if the project does not cause an actual significant emissions increase or significant net emissions increase. But the DTE I *743 panel majority did not read it this way, nor did USEPA. According to them, this regulation means that a renovation is a major modification (requiring a PSD permit) if either a USEPA-approved calculation predicts an emissions increase or emissions actually increase. And, despite the fact that the rules delegate calculation of the prediction to the operator (here DTE), and contain no requirement that the operator obtain USEPA review or approval, USEPA deems both the operator’s prediction and reality meaningless if USEPA disagrees.
Leading in to DTE I, the district court had rejected USEPA’s view and granted summary judgment to DTE in a thorough, well-written, and (I thought) correct opinion, explaining that DTE had followed the regulations and predicted no “significant modification,” thus excusing it from the permit requirements. Moreover, actual events had proven DTE’s prediction correct (and USEPA’s incorrect). But, on appeal, the DTE I majority reversed, opining that: “[a] preconstruction projection is subject to an enforcement action by EPA to ensure that the projection [wa]s made pursuant to the requirements of the regulations.” DTE I, 711 F.3d at 652.
I dissented on three bases. First, the subsequent actual emissions data, which showed an actual emissions decrease, “rendered] moot the case or controversy about pre-construction emissions projections— there can be no permitting or reporting violation because there was, conclusively, no major modification.” Id. (Batchelder, J., dissenting). Next, I explained that, regardless of any purported disclaimer that this was not a prior approval scheme, the reality is that “if the USEPA can challenge the operator’s scientific preconstruction emissions projections in court — to obtain a preliminary injunction pending a court decision as to whether the operator or USEPA has calculated the projections correctly— that is the exact same thing as requiring prior approval.” Id. at 653 (Batchelder, J., dissenting) (footnote omitted). Finally, I explained (twice) that USEPA was not claiming that DTE had failed to follow the regulations:
To be sure, neither of these issues is in question here: there is no contention that DTE failed to prepare a projection (it did) or that DTE misread the rules in applying the governing regulation (it did not). Instead, USEPA relies on its expert’s opinion to second-guess DTE’s projections. See Appellant Br. at 25 (“EPA can use its projections to demonstrate that the operator should have projected a PSD-triggering emissions increase'.”); 24 (“The agency can use its own emissions projections to demonstrate that a proper pre-construction analysis would have shown an emissions increase.”). USEPA’s disagreement is entirely technical and scientific; the dispute is not about the regulation.
Id. at 652 n.l (Batchelder, J., dissenting).
It bears repeating that USEPA does not contend that DTE failed to make a projection or failed to follow the regulations; rather, USEPA relies on its expert’s opinion to second-guess DTE’s technical/scientific projections. See n.l, supra. If the issue here had been one of the foregoing (i.e., if USEPA had wanted to challenge an operator’s failure to make a projection or failure to follow the governing regulation — a challenge that would not require USEPA to rely on an expert’s scientific opinion), that would present different considerations and perhaps result in a different outcome. Because neither of those issues is before us, it is neither necessary nor appropriate to address them here.
Id. at 652 n.2 (Batchelder, J., dissenting). If the DTE I holding had been that *744 USEPA was limited to challenging only whether DTE had failed to follow the regulation, the DTE I majority would have had no basis for reversal, inasmuch as USEPA had not raised any such challenge. Instead, DTE Ts inescapable actual holding was that USEPA may use its own expert’s preconstruction predictions to force DTE to get a PSD construction permit (or to punish DTE for failing to get a PSD permit), even if USEPA’s disagreement is based on debatable scientific or technical reasons and even if actual events have proven USEPA’s expert’s prediction wrong.
On remand, however, the district court tried to limit the DTE I holding rather than just doing as instructed, and once again granted summary judgment to DTE, saying:
In this case, EPA claims that defendants improperly applied the demand growth exclusion when they expected pollution from Unit 2 to go up by thousands of tons each year after the overhaul and then discounted this entire emissions increase by attributing it to additional consumer demand. In other words, EPA does not contend that defendants violated any of the agency’s regulations when they computed the preconstruction emission projections from Unit 2. Rather, EPA takes defendants to task over the extent to which they relied upon the demand growth exclusion to justify their projections. This is exactly what the Sixth Circuit envisioned when it precluded EPA from second-guessing the making of precon-struction emission projections. Moreover, EPA does not point to any regulation requiring source operators to demonstrate the propriety of their demand growth exclusion calculations. And without adequate proof that defendants violated the regulations governing preconstruction emission projections, the instant action cannot withstand summary judgment.
Even assuming that EPA’s reviewing authority is as broad as the agency claims, the Court is bewildered by the prospect of what, if anything, the agency stands to gain by pursuing this litigation. Insofar as the government asserts that defendants misapplied the demand growth exclusion, this contention is belied by the fact that defendants have demonstrated, and the government concedes, that the actual post-project emissions from Unit 2 never increased. Therefore, since its own preconstruction emission projections are now verifiably inaccurate, the government is unable to show that the renovations to Unit 2 constituted a major modification.
R. 196 at 3-4; PgID 7515-16 (quotation marks, editorial marks, and citations omitted).
This analysis ignores two major holdings from DTE I. First, DTE had already established in DTE I that the actual post-project emissions had decreased, so even knowing that USEPA’s pre-construction projections were “verifiably inaccurate,” DTE I still remanded for a ruling on the pre-construction projections, rendering the actual emissions legally irrelevant. Second, we were also fully aware in DTE I that USEPA was not claiming that DTE had overlooked, misapplied, or violated any regulations; USEPA’s only claim was that DTE had scientifically miscalculated the predicted emissions. If the question had been whether or not USEPA could challenge DTE’s failure to comply with the regulations, then DTE I would have affirmed the summary judgment because USEPA had raised no such claim. And I *745 would have had no need to dissent.[2] Rather, the DTE I majority remanded for a ruling on USEPA’s claim that DTE had technically or scientifically miscalculated the hypothetical pre-construction emissions.
II.
Now, USEPA appeals the grant of summary judgment and argues that the district court did not follow the DTE I majority’s remand instructions.
A.
On remand, USEPA re-framed its claims against DTE as noncompliance with particular regulations in an admitted effort to satisfy the DTE I majority’s purported limiting language. That is, USEPA now argues that DTE violated the regulations “in two critical ways.” Apt. Br. at 51. First, USEPA claims that DTE failed to base its predictions on “all relevant information,” required by 40 C.F.R. § 52.21(b)(41)(ii)(a), and ignored its own modeling when claiming that any increase was due to demand increases, in violation of 40 C.F.R. § 52.21(b)(41)(ii)(a). Second, USEPA claims that, in applying the demand growth exclusion, DTE excluded emissions that USEPA believed were related to the project, contrary to § 52.21(b)(41)(ii)(c).
According to the DTE I opinion, this is a legitimate challenge. In fact, this is a far more legitimate challenge than that which the majority opinion condoned in the DTE I appeal. Given the DTE I holding, the district court erred by rejecting this challenge.
B.
USEPA also argues that “[wjhere a source should have expected a project to increase emissions, the work is a major modification and must meet the modification requirements” regardless of “post-project data.” Apt. Br. at 54. USEPA relies on the fact that the DTE I panel “knew that post-project data showed an emissions decrease, and yet ... remanded for further proceedings” anyway; if post-project data were determinative, “there would have been no reason for that remand.” Apt. Rep. Br. at 9-10. This reasoning actually applies throughout.
III.
Based on the foregoing, I conclude that, because we are bound by the DTE I opinion, we must reverse the grant of summary judgment to DTE and remand for reconsideration consistent with that prior opinion. Therefore, I concur in the judgment to REVERSE and REMAND. I do not join any language or analysis that expands or alters the prior opinion.

. In their entirety:
(a) Except as otherwise provided in paragraphs (a)(2)(v) and (vi) of this section, and consistent with the definition of major modification contained in paragraph (b)(2) of this section, a project is a major modification for a regulated NSR pollutant if it causes two types of emissions increases• — a significant emissions increase (as defined in paragraph (b)(40) of this section), and a significant net emissions increase (as defined in paragraphs (b)(3) and (b)(23) of this section). The project is not a major modification if it does not cause a significant emissions increase. If the project causes a significant emissions increase, then the project is a major modification only if it also results in a significant net emissions increase.
(b) The procedure for calculating (before beginning actual construction) whether a significant emissions increase (i.e., the first step of the process) will occur depends upon the type of emissions units being modified, according to paragraphs (a)(2)(iv)(c) through (f) of this section. The procedure for calculating (before beginning actual construction) whether a significant net emissions increase will occur at the major stationary source (i.e., the second step of the process) is contained in the definition in paragraph (b)(3) of this section. Regardless of any such preconstruction projections, a major modification results if the project causes a significant emissions increase and a significant net emissions increase.
40 C.F.R. § 52.21 (a)(2)(iv) (emphasis added).

, As I said in that dissent: "It bears repeating that USEPA does not contend that DTE failed to make a projection or failed to follow the regulations.... [I]f USEPA had wanted to challenge an operator’s failure to make a projection or failure to follow the governing regulation ..., that would present different considerations and perhaps result in a different outcome.” DTE I, 711 F.3d at 652 n.2 (Bat-chelder, J., dissenting).